FILED
2013 Sep-25  AM 08:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **DOROTHY JEAN FRANKLIN,**   ) | |
|     ) | |
|     **Plaintiff,**   ) | |
|     ) | |
| **v.**   ) | **Case No.: 5:12-CV-57-VEH** |
|     ) | |
| **CAROLYN W. COLVIN,**   ) | |
| **ACTING COMMISSIONER,**   ) | |
| **SOCIAL SECURITY**   ) | |
| **ADMINISTRATION,**   ) | |
|     ) | |
|     **Defendant.**   ) | |

## **MEMORANDUM OPINION**[1]

Plaintiff Dorothy Jean Franklin ("Franklin") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for Disability Insurance Benefits ("DIB"). Ms. Franklin timely pursued and exhausted her administrative remedies

---

[1] Carolyn W. Colvin was named the Acting Commissioner on February 14, 2013. *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.") (last accessed on September 16, 2013). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).

## FACTUAL AND PROCEDURAL HISTORY

Franklin was forty-three years old at the time of her hearing before the Administrative Law Judge ("ALJ"). (Tr 31, 88). Her past work experience includes employment as an oil board operator, tube straightener, press operator, nurses aid, chicken processor, and fast food worker. (Tr. 156-162). She claims she became disabled on September 17, 2007, due to high blood pressure, bladder problems, interstitial cystitis, cellulitis, arthritis, back pain, and obesity. (Tr. 37-41, 140). Her last period of work ended in June of 2009. (Tr. 36). On September 25, 2007, Ms. Franklin protectively filed a Title II application for a period of disability and DIB. (Tr. 88). She also protectively filed a Title XVI application for SSI on that date. (Tr 93). Both applications stated that her disability began on September 17, 2007. (Tr 88, 93). On October 2, 2007, the Commissioner denied the plaintiff's claim for SSI benefits. (Tr 54). On December 6, 2007, the Commissioner denied the plaintiff's disability claim. (Tr. 53). On December 12, 2007, Ms. Franklin timely filed a written request for a hearing on her disability benefits only. (Tr 68). The ALJ conducted a hearing on the matter on March 29, 2010. (Tr 14). On May 25, 2010, the ALJ issued her opinion concluding Ms. Franklin was not disabled and denying her benefits. (Tr.

22). On November 16, 2010, Ms. Franklin timely petitioned the Appeals Council to review the decision. (Tr. 10). On November 9, 2011, the Appeals Council issued a denial of review on her claim. (Tr. 1-6). Thus the ALJ's decision became the Commissioner's final disability determination.

Ms. Franklin filed a Complaint with this court on January 6, 2012, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on July 9, 2012. (Doc. 6). On July 9, 2012, the Clerk of Court notified Ms. Franklin, through her counsel of record, that she had "45 days in which to submit to the Court any brief, argument, list of authorities or other statement." (Doc. 7). However, she filed no briefs in support of her claim.[2] On September 24, 2012, the Commissioner filed a brief in support of the decision to deny benefits. (Doc. 8). With the time for briefing now closed, the court has carefully considered the record and reverses the decision of the Commissioner.

## **STANDARD OF REVIEW**

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner

---

[2]The parties to Social Security appeals are not required to file briefs, which highlights the court's independent obligation on appeal to scrutinize the record below for error under a de novo review. *See Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (discussing the district court's independent "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding").

is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act

and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;

(2)   whether the claimant has a severe impairment;

(3)   whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(4)   whether the claimant can perform his or her past work; and

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

> (5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

After consideration of the entire record, the ALJ made the following findings:

1. Ms. Franklin met the insured status requirements of the Social Security Act through December 31, 2013.

2. Ms. Franklin engaged in substantial gainful activity from September 17, 2007, the alleged date of onset of her disability, through June 2009.

3. There was a continuous 12-month period during which the claimant did not

engage in substantial gainful activity.

4. Ms. Franklin had the following severe impairments: osteoarthritis and morbid obesity.

5. Ms. Franklin does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

6. Ms. Franklin had the residual functioning capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except that she must be allowed brief access to the restroom every 2 to 2 ½ hours.

7. Ms. Franklin was unable to perform any past relevant work.

8. Ms. Franklin was born on December 18, 1966, and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

9. Ms. Franklin had a limited education and is able to communicate in English.

10. Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Ms. Franklin was "not disabled," whether or not she had transferable job skills.

11. Considering Ms. Franklin's age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the

national economy that she could perform.

12. Ms. Franklin had not been under a disability, as defined in the Social Security Act, from September 17, 2007, through the date of her decision.

(Tr 16-22).

## ANALYSIS

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[4]  However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Because the plaintiff has filed no brief, she has argued no specific points of error by the Commissioner. Nevertheless, as analyzed more fully below, the ALJ's determination that Ms. Franklin is able to perform sedentary work is not supported by substantial evidence because:

1) The ALJ fails to clarify what weight, if any, she gives to the medical

---

[4]*Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

8

evidence that she discusses in her opinion and also appears to violate the Eleventh Circuit's rules regarding treatment of medical opinions; and

2) The ALJ fails to clarify that she has considered all of Ms. Franklin's impairments both separately and collectively in formulating her residual functional capacity.

Therefore, and under the circumstances of Ms. Franklin's case, the court concludes that the Commissioner has committed reversible error.

## I. THE ALJ'S TREATMENT OF THE MEDICAL EVIDENCE CONSTITUTES REVERSIBLE ERROR

It is well settled in the Eleventh Circuit that an ALJ must state specifically the weight accorded each item of evidence and the reasons for his decision. *See, e.g., Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("What is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision."); *Cowart*, 662 F.2d at 735 ("In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."); *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985) ("The decision rendered by the ALJ also does not make clear the weight accorded the evidence considered."); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985) ("We cannot, however, conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the

evidence considered." (citing *Owens v. Heckler*, 748 F.2d 1511 (11th Cir. 1984))).

With respect to an ALJ's consideration of medical opinions more specifically, the following framework applies:

> In assessing the medical evidence in this case, the ALJ was required to state with particularity the weight he gave the different medical opinions and the reasons therefor. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Further, he was required to accord considerable weight to appellant's treating physician's opinion absent good cause for not doing so. *Broughton v. Heckler*, 776 F.2d 960, 961–62 (11th Cir. 985) (per curiam). The opinions of nonexamining, reviewing physicians, such as those of Drs. Thomas and Register, when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence. *See Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (per curiam). Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam).
>
> The ALJ, here, disregarded these rules in assigning weight to the various medical opinions. The only opinions that indicated that appellant could meet the medium work requirements of 20 C.F.R. 404.1567(c) (1986) were those of the nonexamining physicians, Drs. Thomas and Register. Their opinions were entitled to little weight, however, and could not serve as substantial evidence.

*Shafarz v. Bowen*, 825 F.2d 278, 279-80 (11th Cir. 1987).

The ALJ ran afoul of these requirements when she determined which of the plaintiff's impairments were "severe," and when she determined the plaintiff's residual functional capacity.

The ALJ found Plaintiff's osteoarthritis and obesity were severe impairments.

She also found that the plaintiff's other impairments (hypertension, panniculitis/cellulitis, a history of interstitial cystitis, headaches, and fibromyalgia) were not severe. (Tr. 17). In making this determination, the ALJ discussed the plaintiff's treatment with Dr. Kirk L. Jackson, Dr. Paul J. Zbell, Dr. Gregory S. Cheatham, Dr. K. Dean Willis, Dr. Ahmad G. Shikhtholth, Dr. Shelinder Aggarwal, and Dr. Vijay Jampala.[5] However, the ALJ did not state what weight she assigned to the evidence relating to these doctors.

Next, in determining the plaintiff's residual functional capacity, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr 18). The ALJ also found that "[t]he medical evidence shows the claimant has underlying medical conditions, but is does not support her allegations of severe and chronic pain and limitation of function to the degree that it would preclude the performance of all substantial gainful activity." (Tr 19). However, in making these determinations, the ALJ fails to discuss most of the evidence noted in the preceding paragraph, instead discussing only evidence relating to Dr. Jampala, a non-treating physician, and Dr. Cheatham, a

---

[5]The ALJ specifically noted that three of these physicians, Drs. Willis, Aggarwal, and Cheatham, were treating physicians.

11

treating physician.

As to Dr. Jampala, the ALJ again does not explain what weight she gives this evidence. Apparently she gave it substantial weight, because she found that the plaintiff's complaints of severe and substantial pain were "inconsistent" with Dr. Jampala's exam "which shows her only current, active problem appears to be either cellulitis or panniculitis, neither of which is disabling." (Tr 19).

Thereafter, the ALJ stated that she "rejects the disabling opinion of Dr. Cheatham, who stated that the claimant frequently will need rest periods during the day to walk about or lie down to relieve pain." (Tr 19)(citing Tr 343). Importantly, absent good cause to the contrary, the Commissioner must accord substantial or considerable weight to the treating physician's opinion. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988); *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987); *Sharfarz v. Bowen*, 825 F.2d 278, 279-80 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Ortega v. Chater*, 933 F. Supp. 1071, 1074 (S.D. Fla. 1996) (citing *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991), *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990)); *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986); *Giddens v. Chater*, Case No. 95-148-1-MAC (CWH), 1996 WL 392143 at *2 (M.D. Ga. Feb. 23, 1996). The only reason given by the ALJ for rejecting Dr. Cheatham's opinion is that "[t]he assessment of Dr. Cheatham is

inconsistent with the minimal objective clinical findings of record." (Tr 19). While the Commissioner discusses these findings in her brief,[6] the ALJ failed to point to any specific clinical findings, examinations, or other medical opinions in reaching this conclusion. Such conclusory dismissals of a treating physician's opinion are error. *See, Borden v. Astrue*, 494 F. Supp.2d 1278, 1283-84 (N.D. Ala. 2007) (Guin J.) (ALJ's only stated reason for discounting the treating doctor's opinion that it was "inconsistent with his own objective clinical findings" was not good cause).

Further, the ALJ failed to discuss or assign weight (whether great or small) to the other opinions of Dr. Cheatham. As noted by the Commissioner in her brief:

> Dr. Cheatham opined Plaintiff could sit for seven hours, stand two hours, and walk one to two hours in an eight-hour workday; lift and carry ten pounds occasionally and five pounds or less frequently; and push and pull frequently with her hands, arms, legs and feet (Tr. 341-42). He also identified some manipulative, postural and environmental limitations (Tr. 342). Dr. Cheatham opined Plaintiff would need rest periods to walk about or lie down to relieve pain and

---

[6]He writes:

Plaintiff's physical examinations after her alleged September 17, 2007 disability onset date (Tr. 88) were primarily unremarkable (Tr. 199, 258, 338, 347-53, 366, 368, 371, 373, 377, 384, 391, 397, 410, 421-22, 428, 442-43, 451). Aside from occasional back tenderness (Tr. 338), they reflected she had a normal back inspection (Tr. 199, 384, 397, 421), she could move all extremities well, she was neurologically intact (Tr. 258, 347-53, 366, 368, 373, 377, 391, 442-43), she had normal 5/5 motor strength, and she had negative straight leg raising test (Tr. 338). Magnetic Resonance Imaging (MRI) of her lower spine was also "normal" (Tr. 17, 299).

(Doc. 8 at 9).

would likely miss more than three or more days per month (Tr. 343).Dr. Cheatham also opined that the plaintiff had "chronic" and "[continuous]" pain as a result of her medical condition. (Tr 343). He classified her pain as "moderately severe," and stated that a "muscle spasm" is an objective sign of her pain. (Tr 343).

(Doc. 8 at 10). None of these opinions were discussed or assigned weight by the ALJ.[7] The failure to address Dr. Cheatham's opinion that the plaintiff would likely be absent from work three or more days per month is particularly troublesome because, at the vocational hearing, the vocational expert testified that missing three or more days of work per month would prevent the plaintiff from working. (Tr 50). Finally, the ALJ discussed no other physical capacity assessments, or other opinions which conflict with Dr. Cheatham's statements. This was error, as an ALJ may not arbitrarily reject uncontroverted medical testimony. *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982) (*citing Goodley v. Harris*, 608 F.2d 234, 236 (5th Cir. 1979)).

Because the ALJ did not correctly consider the record evidence, her opinion must be reversed.[8]

---

[7]The Commissioner states that "[t]he ALJ also considered the physical capacities opinion of Dr. Cheatham and gave it little weight." (Doc. 8 at 10). As shown above, the ALJ assigned no weight to the physical capacities evaluation, and only discussed (and rejected) "the disabling opinion of Dr. Cheatham, who stated that the claimant frequently will need rest periods during the day to walk about or lie down to relieve pain." (Tr 19)(citing Tr 343).

[8]The Commissioner argues that Dr. Cheatham's opinion was conclusory, and therefore could be rejected on that basis. That was not one of the reasons cited by the ALJ for rejecting Dr.

## II. THE COURT CANNOT VERIFY WHETHER THE ALJ CONSIDERED ALL OF MS. FRANKLIN'S IMPAIRMENTS SINGULARLY OR IN COMBINATION WHEN FORMULATING HER RESIDUAL FUNCTIONAL CAPACITY.

In determining the plaintiff's residual functional capacity, the ALJ was required to consider the claimant's entire medical condition, including impairments she determined were not severe. *See Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902 (11th Cir. 2011) (unpublished disposition); see also 20 C.F.R. § 404.1520(e) (The Commissioner considers all the claimant's impairments when determining a claimant's RFC at steps four and five of the sequential evaluation); *Davis v. Shalala*, 985 F.2d 528, 532 (11th Cir. 1993) ("If the Secretary finds, at step two, 'a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.'" (quoting 20 C.F.R. § 416.923)); *Reeves v. Heckler*, 734 F.2d 519, 525 (11th Cir. 1984) ("20 C.F.R. § 404.1522 (1983) requires the ALJ to consider the combination of a claimant's impairments. The reason for this is so obvious that it requires no discussion . . . [T]his failure to follow the regulations requires that the case be remanded for further consideration under the appropriate standards").

In *Hudson*, the Eleventh Circuit succinctly explained this rule relating to

---

Cheatham's opinion, and the Commissioner cannot substitute its brief for the ALJ's findings.

multiple impairments:

> Appellant does correctly contend, however, that the Secretary did not follow her own regulations.  In making her disability determination the ALJ found that appellant had the following impairments: obesity, chronic low back pain (no etiology established), chronic intermittent hypertension, a mild to moderate dysthymic disorder, and a histrionic personality disorder.  The ALJ decided that separately none of these impairments was so severe as to render appellant disabled. The ALJ, however, did not consider whether the combination of appellant's impairments rendered her disabled.  Where a "claimant has alleged a multitude of impairments, <u>a claim . . . may lie even though none of the impairments, considered individually, is disabling</u>." *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir.1984). The ALJ, therefore, has a duty to consider the impairments in combination.  *See* 20 C.F.R. § 404.1522 (1984). <u>Failure to do so requires that the case be vacated and remanded for the proper consideration</u>.

755 F.2d at 785 (footnote omitted) (emphasis added).

In this case, in determining residual functional capacity, the ALJ never expressly states in her analysis that she is considering the impact of each one of Ms. Franklin's impairments both singularly and collectively.  Instead, she generally finds that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible." (Tr 18).  The ALJ's analysis contains no specific listing or specific discussion of the symptoms of each disorder, nor even a discussion of why the plaintiff says these impairments prevent her from working. Further, the ALJ does not discuss the physical impact of each of these disorders separately, and in combination.  When discussing the plaintiff's residual functional

16

capacity, the ALJ discusses only the plaintiff's subjective complaints of pain, but no other symptoms. Further, the ALJ fails to explain which disorders cause the plaintiff pain, or how the plaintiff says the pain limits her ability to work. (Tr 18-19).

In *Gibson v. Heckler*, 779 F.2d 619 (11th Cir. 1986), the Eleventh Circuit reversed an ALJ's finding that the claimant was not disabled because the ALJ failed to consider all impairments singularly and in combination. *See Gibson*, 779 F.2d at 623 ("This court agrees that the ALJ failed to consider each impairment alleged by Mrs. Gibson and the combined effect of those impairments."). As the Eleventh Circuit further explained in *Gibson*, the ALJ "did not discuss whether these claimed impairments were sufficiently severe—either singularly or in combination—to create a disability." *Id.*; *see also Strickland v. Harris*, 615 F.2d 1103, 1110 (5th Cir. 1980) ("The ALJ addressed certain of the claimant's complaints separately, tending to minimize them . . . , but he devoted no discussion and made no factfindings as to disability indicated as arising from the interaction or cumulation of even those medical problems whose existence he acknowledged or did not rule out.").[9]

The court rejects the Commissioner's contention that the ALJ's general and conclusory statements that she considered "the entire record," and "all symptoms" is

---

[9] *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

sufficient. (Doc. 8 at 6) (citing Tr. 18). Because the court cannot verify from the record before it that the ALJ considered all of Ms. Franklin's impairments, singularly or collectively, in making her residual functional capacity determination, the Commissioner's final decision is not supported by substantial evidence, and the case is due to be remanded for further development of the record for this alternative reason.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the Commissioner did not apply proper legal standards in reaching a final decision. Accordingly, the decision will be reversed and remanded by separate order.

**DONE** and **ORDERED** this the 25th day of September, 2013.

*/s/ Hopkins*

**VIRGINIA EMERSON HOPKINS**
United States District Judge